IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALI EKHLASSI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-1257 |
| | § | |
| NATIONAL LLOYDS INSURANCE CO. | § | |
| and AUTO CLUB INDEMNITY CO., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION GRANTING NATIONAL LLOYDS' MOTION FOR SUMMARY JUDGMENT**

This case arises from a dispute over flood-insurance payments for damage from a Houston, Texas storm in May 2015. Ali Ekhlassi held two insurance policies: a Texas Homeowners Deluxe Policy issued by the Auto Club Indemnity Company; and a flood-insurance policy with National Lloyds Insurance Company, underwritten by the Federal Emergency Management Agency. (Docket Entry Nos. 16-2, 16-3). The court previously granted Auto Club's motion for partial summary judgment. (Docket Entry No. 17). National Lloyds now moves for summary judgment on the basis that the statute of limitations bars Ekhlassi's claims.

Based on the motion, the record evidence, and the applicable law, National Lloyds' motion for summary judgment is granted and Ekhlassi's claims are dismissed, with prejudice. The reasons are stated below.

**I.     Background**

The relevant facts are undisputed. Between May 23 to 25, 2015, a severe storm caused heavy flooding in Houston. Ekhlassi suffered significant damage to his home when five to six feet

1

of floodwater filled his unfinished basement garage for two days. Ekhlassi alleges a loss amount of $274,940.05 for the flood damage. (Docket Entry No. 19 at 2). Ekhlassi had coverage under both the Homeowners policy from Auto Club and the flood policy from National Lloyds, before and during the storm. The National Lloyds policy was part of the National Flood Insurance Program administered by the Federal Emergency Management Agency.

In May 2015, just after the flood, Ekhlassi reported his losses to National Lloyds. A few days later, National Lloyds sent insurance adjuster Jim Nemechek to inspect Ekhlassi's property. Nemechek estimated losses totaling $3,768.15 for "flood loss clean-up and other covered damages," but found that all other damages were excluded under Ekhlassi's policy. (Docket Entry No. 18 at 3).

On October 6, 2015, National Lloyds sent Ekhlassi a letter stating that he had not yet submitted a proof of loss form for his claim and that it could not process his claim payment for $3,768.25 until it received his proof of loss. (Docket Entry No. 18, Ex. C). The letter informed Ekhlassi that he had 240 days from the date of loss to provide the signed and sworn proof of loss and that National Lloyds was denying payment for "any building and contents items not subject to direct physical loss by or from flood" and "all non-covered items located below the lowest elevated floor of your post-FIRM elevated building." (*Id.*). On December 28, 2015, Ekhlassi provided the sworn proof of loss to National Lloyds, stating an amount of $276,190.05 less the deductible, for a total of $274,940.05. On January 11, 2016, National Lloyds sent Ekhlassi a second letter rejecting the proof of loss, confirming that it would pay only the previously determined amount of $3,768.25, and referring Ekhlassi to the October 6, 2015 denial letter for the reasons. (Docket Entry No. 18, Ex. E).

One year later, on January 11, 2017, Ekhlassi sued National Lloyds and Auto Club, alleging breach of contract, violations of Chapters 541 and 542 of the Texas Insurance Code, and violations of the Deceptive Trade Practices Act. TEX. INS. CODE § 541.060, 542.055-60; TEX. BUS. COM. CODE § 17.46.

National Lloyds moved for summary judgment, (Docket Entry No. 18), and Ekhlassi responded, (Docket Entry No. 19). The summary judgment record evidence includes a copy of Ekhlassi's Standard Flood Insurance Policy, Number 1547431881, a copy of the loss report, the October 6, 2015 letter from National Lloyds to Ekhlassi, Ekhlassi's original petition, a copy of the January 11, 2016 letter from National Lloyds to Ekhlassi, an affidavit from National Lloyds' records custodian, and FEMA memorandum W-15022 granting a 180-day extension for policy holders to submit proof of loss. This record is analyzed under the applicable legal standards.

## II. The Legal Standards

### A. Summary Judgment

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex*

3

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by showing an absence of evidence to support the nonmoving party's case. *Fret v. Melton Truck Lines, Inc.*, No. 17-50031, 2017 U.S. App. LEXIS 16912, at *5–6 (5th Cir. Sept. 1, 2017) (quoting *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994)). While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (citing *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). A fact is material if "its resolution could affect the outcome of the actions." *Aly v. City of Lake Jackson*, 605 Fed. App'x 260, 262 (5th Cir. 2015) (citing *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Pioneer Exploration, LLC v. Steadfast Ins. Co.*, 767 F.3d 503 (5th Cir. 2014).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Bailey v. E. Baton Rouge Parish Prison*, 663 Fed. App'x 328, 331 (5th Cir. 2016) (quoting *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010)). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Jurach v. Safety Vision, LLC*, 642 Fed. App'x 313, 317 (5th Cir. 2016) (quoting Boudreaux, 402

4

F.3d 536, 540 (5th Cir. 2005)). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 866 F.3d 698, 702 (5th Cir. 2017).

### B. The National Flood Insurance Program

The National Flood Insurance Program is a statutorily-created insurance program, administered by FEMA and the Federal Insurance Administration, and underwritten by the U.S. Treasury. The terms of the insurance policy are established by FEMA. 44 C.F.R. §§ 61.4(b), 61.13(d). National Lloyds serves as a "Write Your Own" insurer, a private insurance company that issues the Standard Flood Insurance Policy "in the place and stead of the Federal Insurance Administrator." 44 C.F.R. § 61.13(f). National Lloyds acts as a fiscal agent of the United States and may not alter, vary, or waive any provision of the Standard Policy. 42 U.S.C. § 4071(a)(1); 44 C.F.R. §§ 61.4(b), 62.23(c).

Under the Standard Policy, a policyholder cannot file a lawsuit without first complying with all policy requirements. 44 C.F.R. § 61, app. (A)(1), art. VII(R). FEMA requires strict adherence to all conditions precedent, including submission of a sworn proof of loss. *Marseilles Homeowners Condo Ass'n v. Fid. Nat'l Ins. Co.*, 542 F.3d 1053, 1057 (5th Cir. 2008); *see also* 44 C.F.R. § 61, app. A(2), art. VII(J)(4). A claimant may challenge a denial of coverage by filing suit within one year of receiving notice of that denial. 42 U.S.C. § 4072 ("[T]he claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Administrator, may institute an action against the Administrator on such claim"); *see also* 44 C.F.R. Pt. 61, App. A(1), Art. VII(R) ("You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy. If you do sue, you must start the suit within one year after the date

5

of the written denial of all or part of the claim, and you must file the suit in the United States District Court of the district in which the covered property was located at the time of loss. This requirement applies to any claim that you may have under this policy and to any dispute that you may have arising out of the handling of any claim under the policy.").

The issue here is limitations, which turns on when Ekhlassi received notice of the denial of his claim.

## III.   Analysis

If, as Ekhlassi claims, the January 11 letter was the notice of denial, then his suit is timely filed. If, as National Lloyds argues, the October 6 letter was the notice of denial, then the suit is untimely and barred by the statute of limitations.

The October 6 letter made clear that it was a denial of Ekhlassi's claim. The letter stated, in part:

> The Independent Adjuster's final report indicates there were no visible signs of covered flood damage to the subfloor and flooring of the first elevated floor. We are denying payment for any building and contents items not subject to direct physical loss by or from flood, pursuant to the Standard Flood Insurance Policy . . . .
> . . .
> In accordance with the Standard Flood Insurance Policy, we are denying payment for all non-covered items located below the lowest elevated floor of your post-FIRM elevated building . . . .

(Docket Entry No. 18, Ex. C). The letter also stated that "[i]f you do not agree with our decision to deny your claim, in whole or in part, Federal law allows you to appeal that decision within 60 days of the date of this denial letter." The October 6 letter instructed Ekhlassi that National Lloyds had determined that it would cover his losses in the amount of $3,768.25, but it could not process his payment unless and until he submitted his sworn proof of loss.

6

In contrast, the January 11 letter states that the amount of the claim was previously determined in the prior letter: "Please be advised the below referenced flood claim payment(s) were previously sent out under separate cover . . . ." The letter rejected Ekhlassi's attempt to increase his payment by submitting a proof of loss for the full amount, and confirmed that National Lloyds would only pay the previously determined amount. In fact, the January letter referenced the October letter directly, stating: "Please refer to the denial letter dated October 6, 2015 for what Federal law allows under the Standard Flood Insurance Policy and for the reasons of denial for damages that have been claimed." (Docket Entry No. 18, Ex. E). The letter makes clear that National Lloyds had already denied the claim in October.

This result is consistent with the case law. In *Cole v. N.H. Insurance*, No. 1:10CV183-SA-DAS, 2012 U.S. Dist. LEXIS 2513, at *31 (N.D. Miss. Jan. 9, 2012), the court addressed a letter identical to the one at issue here:

> Here, on May 14, 2009, Defendant sent Plaintiffs a written denial letter. Specifically, the letter stated, "*We are denying* all non-covered items located below the lowest elevated floor of your post-FIRM elevated building, pursuant to the Standard Flood Insurance Policy[.]" The letter further stated, "If you do not agree with your insurer's *decision to deny your claim or any part of your claim*, Federal law allows you to appeal that decision within 60 days of the date of this denial letter." Thus, May 14 is the date of mailing of the notice of "disallowance or partial disallowance" (or as stated in the SFIP notice that the claim has been "denied " in whole or part) for purposes of the running of the statute of limitations.

(emphasis in original). Similarly, in *Wing Building Holding Co., LLC v. Standard Fire Insurance, Co.*, No. 1:13-CV-1007, 2015 U.S. Dist. LEXIS 17761 (N.D.N.Y. Feb. 13, 2015), the court compared two letters sent by the insurance company to the plaintiff. The first letter stated:

> *While we cannot make formal determinations on your claim until we receive your Proof of Loss and a waiver from FEMA*, it is our understanding from the Independent Adjuster that you are looking for coverage on items that are not covered under the Standard Flood Insurance Policy such as mold, the elevator's related equipment, and foundation damage. *We would be required to deny* any damage from mold, moisture and/or mildew . . . . *We would be required to deny* damage to the elevator's related equipment . . . .
>
> Cleaning invoices from Insulate & Accessorize Company for $17,300 were submitted for consideration. Invoices 4701 and 4714 are not itemized; contain duplicate charges and non-covered items such as contents and manipulation. *We would be required to deny* coverage for contents manipulation . . . .

*Id.* at 3 (emphasis in original). By contrast, the second letter stated:

> *We are denying* payment for elevator and waste management invoices for contents located in the basement and all other non-covered items located in the basement . . . .
>
> *We are denying* payment for any pre-existing damages and damage from mold . . . .
>
> . . . we are hereby complying with the Standard Flood Insurance Policy's requirement regarding payment or rejection of the insured's Proof of Loss within 60 days of its being filed by the insured. We have received a signed proof of loss in the amount of $115,374.00. *We are accepting* $12,373.21 of the Proof of Loss *and are rejecting* $103,000.79 . . . .
>
> If you do not agree with our decision to deny your claim or any part of the claim, Federal law allows you to appeal the decision within 60 days of the date of *this denial letter.*

*Id.* at *4 (emphasis in original). The court explained that the difference in the two letters was "self-evident." *Id.* The first letter repeatedly used "conditional language" to signify "a possible or likely future determination"; the second letter "definitively states" the outcome of the claims and refers explicitly to the letter itself as a "denial letter." *Id.* The second letter was the denial of the insurance claim at issue and the point at which the statute of limitations began to run.

8

The same is true here. The October 6 letter makes clear that National Lloyds was denying the majority of Ekhlassi's claim at that time. The letter refers to itself as a denial letter. The statute of limitations began to run at that point. Because Ekhlassi waited more than one year to file suit, his claim is barred.

Ekhlassi cites two cases in support of his argument that the January 2016 letter gave him notice, not the earlier letter. Both cases are distinguishable. In *Qadar v. FEMA*, 543 F. Supp. 2d 558 (E.D. La. 2008), the court addressed the same issue, but noted that after Hurricane Katrina, FEMA substantially modified the the National Flood Insurance Program to expedite claims, in part by partially waiving the proof of loss requirement. With this waiver, a policyholder who agreed with an adjuster's estimate could settle a that claim without any proof of loss. By contrast, the limited waiver in this case granted an extension of the time to file a proof of loss from 60 days to 240 days from the flood date. (Docket Entry No. 19-1 at 1). However, FEMA also made clear that "[b]y granting this limited waiver and extension of the time period to send a proof of loss, FEMA does not hereby waive any other provisions of the [Policy], and all other terms and conditions of the [Policy] remain in effect." (*Id.*). The one-year deadline to file suit remained. The second case, *Kroll v. Johnson*, No. 14-2496, 2014 U.S. Dist. LEXIS 128597 (D.N.J. Sept. 15, 2014), applied the reasoning from *Qadar* to an identical extension FEMA granted for Hurricane Sandy. Unlike those cases, Ekhlassi's proof of loss did not appeal FEMA's decision, but was a prerequisite to payment. In this case, FEMA denied Ekhlassi's claim in October 2015 and simply required submission of the sworn proof of loss before it could pay on the claim.

**IV.    Conclusion**

For the reasons stated above, National Lloyds' motion for summary judgment, (Docket Entry

No. 18), is granted. This case is dismissed, with prejudice.

SIGNED on January 9, 2018, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge